## Chicago Yacht Club v. Clarence W. Marks.

1. RIPARIAN RIGHTS—*Former Decisions—Application of the Case of The City of Chicago v. Ward (169 Ill. 392).*—Where the allegations of a bill for an injunction disclose that the structure sought to be enjoined is neither within the lake front park, as at present existing, nor within the tract included by the proposed extension of it, but on the contrary, is outside the government breakwater and the harbor line established by the Federal government, the decision in the case of The City of Chicago v. Ward, 169 Ill. 392, has no application.

2. SAME—*Upon Lake Michigan.*—The rights of a riparian owner on Lake Michigan, as announced by our Supreme Court, are limited to the boundaries of his land extended, and consist only of the common law rights of access to the lake from his property, within its width, and to natural accretions.

3. RIPARIAN OWNERS—*Rights of View.*—No authority is cited in this case applicable to riparian rights of owners, which holds that a riparian right owner can protect his view over the water, except it may be in cases where he is the owner of the soil under the water to the center of a stream, and such authorities have no application to the owners of riparian rights upon Lake Michigan.

4. INJUNCTIONS—*Restraining Interference with Riparian Rights.*—The builders of a structure which in no measure interferes with an owner's access to his land or to the natural accretions incident thereto will not be enjoined at the suit of a private owner.

**Bill for an Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the March term, 1901. Reversed. Mr. Justice WINDES concurring in part. Opinion filed October 10, 1901.

(406)

**Statement.**—This is an appeal from an interlocutory order of injunction, restraining appellant from proceeding with the erection of a club house in the Chicago harbor of Lake Michigan at a place east of the lake front park of the city of Chicago.

The appellee, upon whose bill of complaint the order was issued, is the owner of premises located at the southwest corner of Michigan avenue and Washington street, fronting upon the lake front park. These premises are a part of the Fort Dearborn addition to Chicago.

The bill of complaint alleges that appellee derives his title to the premises through *mesne* conveyance from the United States, and that the premises were purchased by his grantors and himself by reference to the plat of Fort Dearborn addition, which showed the land lying east of these premises, between them and Lake Michigan, *i. e.*, the lake front park, to be a public park to be forever free from any buildings, and that by reason of such restriction upon building upon the said lake front park, the premises of the appellee have an enhanced value; that said Fort Dearborn addition extended from Randolph street on the north to Madison street on the south, and prior to the filing of said plat or subdivision, the canal commissioners of the Illinois & Michigan Canal, acting as agents for the State of Illinois, laid out, acknowledged and filed a plat of fractional section 15, which property bounded the Fort Dearborn addition on the south and extended from Madison street on the north to Park Row on the south, and that the eastern part of said plat was designated as Michigan avenue; and that said commissioners sold lots facing upon said open space marked Michigan avenue with reference to said plat, and announced to the purchasers and the public that Michigan avenue and the land east thereof was an open, public park; that the city of Chicago has accepted such dedication of the lake front park as a public park, and has expended large sums of money in the maintenance and improvement of said park; that the submerged land lying east of the right of way of the Illinois Central Railroad to the government breakwater

established by act of Congress in the year 1890, and from Randolph street on the north to Park Row on the south, had been added to said park by appropriate acts of the common council and the State of Illinois, and the city of Chicago and the South Park commissioners are filling in and reclaiming said land for the purpose of adding the same to lake front park. That said portion added to the original limits of lake park is impressed with the same conditions, restrictions and prohibitions that attach to and impose upon the original limits of lake front park; that appellant is causing to be constructed upon piles immediately east of and adjoining said breakwater, which defines the eastern boundary of said lake park, and at the foot or about the foot of Monroe street, and opposite the lots of appellee, and is continuing to build and erect a certain frame club house or building to the height of about sixty feet above the surface of the water, and of a length north and south of about eighty feet, and proposes to use said building and club house for the purpose of a club house for its members; that the erection of said building prevents and obstructs the uninterrupted view of the waters of Lake Michigan from the lots of appellee and the right of ingress and egress from Lake Michigan to appellee's lots and the lots of other owners abutting on Michigan avenue, and interferes with the rights of appellee which exist by reason of representations made by the United States Government and the canal commissioners, as aforesaid.

The bill alleges that appellant, being fully advised of the character of lake front park and of the rights of abutting property owners thereon, conspiring to evade the law, has caused its club house to be located just east of the defined limits of the lake front park.

The bill also sets up the decree in the suit of Montgomery Ward et al. v. The City of Chicago, in relation to the lake front park, and the decision of the Supreme Court of Illinois affirming such decree. The prayer of the bill as against appellant is for temporary and permanent injunction, restraining it from continuing with the erection of its club house.

Upon the exhibition of the bill of complaint, the court below granted the temporary injunction as prayed for, and it is from that order that the appeal here is prosecuted.

The history of the lake front park and the various legislation which has been enacted in relation to it, will be found set forth at length and with great care in the statement preceding the opinion of the Supreme Court in City v. Ward, 169 Ill. 392.

George B. Shattuck, N. W. Hacker and Charles E. Kremer, attorneys for appellant; Robert Rae, John C. Black and Harry S. Mecartney, of counsel.

George P. Merrick, attorney for appellee; John P. Altgeld, of counsel.

Mr. Justice Sears delivered the opinion of the court.

It is sought by the learned counsel for appellee to sustain the order of injunction appealed from upon the ground that appellee, as owner of premises abutting upon the lake front park, is entitled, as if he were shore owner, to protection against the encroachment by appellant's club house. In this behalf it is argued that the city of Chicago is the riparian owner as trustee, and that appellee, as one of *cestui que trust*, may maintain this bill to protect riparian rights. It is also contended that by reason of the representations of the United States government and the canal commissioners, appellee bought these premises relying upon the lake front, park being kept free from all buildings, and that this building of appellant is an invasion of appellee's rights thus acquired.

These contentions are based upon the supposed application of the decision in City v. Ward, 169 Ill. 392.

We are unable to assent to these contentions of counsel, or to either of them, and we are of opinion that the decision in the Ward case is not applicable to the facts disclosed by this bill of complaint.

The substance of the decision in the Ward case, so far as need be here considered, is to the effect that the lake front

park was dedicated to the public as an open park; that in the absence of consents from abutting property owners, the city of Chicago has no right to erect or permit the erection of any building upon the lake front park, and that owners of lands abutting upon this park may maintain a bill in equity to enjoin the city from using the park for purposes prohibited by the terms of the trust under which the dedication was accepted. It is also held, in effect, that the city of Chicago is vested with the riparian rights incident to the land embraced in the lake front park, and that the city holds such riparian rights in trust in the same manner that it holds title to the land composing the lake front park itself.

In the opinion delivered by Mr. Justice Carter, speaking for the court, it is said :

" The main question involved in this litigation is, has the city of Chicago a right to erect, or to permit to be erected, any buildings on the tract of land known as lake park."

If, in this cause, the right of appellant to erect a building on the tract of land known as lake park was involved, we would have no hesitation in holding that the decision in the Ward case applied and governed here. But there is no allegation in this bill of complaint that appellant is causing any building to be placed upon the park. On the contrary, it is specifically alleged that appellant is building "at the foot of Monroe street" and "upon piles immediately east of and adjoining the said breakwater which defines the eastern boundary line of said park," and, further, that appellant, its agents, officers and representatives, "being fully advised of all the provisions, inhibitions and purposes of said decree, and conspiring and conniving and seeking to evade the same, have caused said building, in so far as it has progressed, to be located just east of and adjoining the defined limits of said lake park, but immediately adjacent or contiguous thereto, so that said building, although not actually upon said land or waters of the park itself, or within the exact limits thereof, is so immediately adjacent or connected therewith, that its existence in its present

location obstructs the view of Lake Michigan in the same way and substantially to the same effect as if placed adjacent to the western wall of said breakwater and within the defined limits of said lake park."

It is alleged in the bill that an ordinance of the city of Chicago, enacted on October 21, 1895, provided that for the purpose of providing suitable public landing places for steam vessels and other crafts employed in navigation on Lake Michigan, the public grounds of the city of Chicago, known as lake park, lying east of Michigan avenue, between the south line of Randolph street and the north line of Lake Park Place, formerly known as Park Row, shall be extended east of the tracks and grounds of the Illinois Central Railroad Company, by inclosing and filling all that space in the shallow waters of Lake Michigan within the outer harbor, so-called, included within the following boundary lines, to wit: The south line of Randolph street produced on the north; the harbor line established by the secretary of war September 22, 1890, on the east; the south line of Lake Park Place produced, on the south, and the present westerly shore line of the said outer harbor on the west; and that by virtue of said ordinance the city proceeded to fill in the submerged portion of said park, together with the South Park commissioners, and they are now actively engaged in the work of filling in said park.

But the allegations of the bill disclose that appellant's structure is neither within lake front park as at present existing, nor within the tract included by the proposed extension; and that on the contrary, it is on the outer harbor, outside of the government breakwater, and outside of the harbor line established by the Federal government. We are unable, therefore, to see the application of the decision in the Ward case to the present appeal. The right of Mr. Ward to maintain his suit, as sustained by the decision of the Supreme Court, is the right of an abutting property owner on Michigan avenue to protect the lake front park from any use contrary to the uses and purposes to which it

was dedicated and for which the city of Chicago holds it in trust. The enactment of the legislature of the State reducing the act incorporating the city of Chicago and its various amendments to a single act (Section 43 of chapter 7, enacted February 12, 1863), provided :

" No encroachments shall be made upon land or water west of a line mentioned in the second section of an ordinance concerning the Illinois Central Railroad (which line is not less than 400 feet east from the west side of Michigan avenue, and parallel thereto), by any railroad company, nor shall any cars, locomotives, engines, machines or other things belonging to any railroad or transportation company be permitted to occupy the same, nor shall any cars or machinery be left standing upon said track fronting any part of Michigan avenue, nor shall the city council ever allow any encroachments west of the line above described. Any person being the owner of or interested in any lot or part of a lot fronting on Michigan avenue shall have the right to enjoin said company, and all other persons and corporations, from any violation of the provisions of this section or of said ordinance, and by bill or petition in chancery, in his or their own name or otherwise, enforce the provisions of the said ordinance and of this section, and recover such damages for any such encroachment or violation as the court shall deem just. The State of Illinois, by its canal commissioners, having declared that the public grounds east of said lots should forever remain open and vacant, neither the common council of the city of Chicago, nor any other authority, shall ever have the power to permit encroachments thereon without the assent of all the persons owning lots or land on said street or avenue."

By force of this provision Mr. Ward had standing in a court of equity to maintain his bill, and the decision in the Ward case sets forth this provision in the statement preceding the opinion. But whether the holding in the Ward case that Ward was entitled to maintain his bill was based upon this provision, or upon the broader ground of his right as *cestui que trust*, irrespective of the enactment, in either event it would not seem to apply in aid of the appellee here. For the appellee is seeking to prevent the construction of a building which, according to the allegations of his bill of complaint, " is not actually upon said land or

waters of the park itself," but is on the outer harbor and outside of the government breakwater.

If appellee was in fact the owner of the riparian rights incident to his lots, yet it is difficult to see how he could, in that event, maintain this bill. The rights of a riparian owner on Lake Michigan, as announced by our Supreme Court, are limited to the boundaries of his land extended, and consist only of the common law right of access to the lake from his property, within its width, and to natural accretions. Revell v. The People, 177 Ill. 468.

We can not find any allegation of facts in the bill of complaint here which would warrant the conclusion that the structure in question would in any measure interfere with appellee's access to his land or accretions thereto, if he, instead of the city, were the owner of the riparian rights incident to the land in front of his lots and of the width thereof. This structure, built in front of Monroe street, about two blocks south of the lots of appellee, could not have any such relevancy to appellee's lots. But it is insisted that the structure impedes or will impede the view over the waters of Lake Michigan from appellee's premises. No authority is cited to us which holds that a riparian right owner can protect his view over the water, except, it may be, in cases where he is the owner of the soil under the water to the center thread of a stream. Such cases do not apply to an owner of riparian rights upon Lake Michigan. Revell v. The People, *supra.*

Moreover, the view from appellee's premises at the corner of Washington street and Michigan boulevard can scarcely be said, from the allegation of facts in the bill, to be obstructed by a building in the lake opposite the foot of Monroe street. If appellee could maintain this bill at all, it would be as a *cestui que trust* of the city and for the protection of the public park which the city holds in trust. We are of opinion that the allegation of the bill of complaint that the building of appellant is not upon the land or waters of the park precludes us from sustaining the bill upon this ground. This is not a procedure by the State of Illinois,

as owner of land covered by the waters of Lake Michigan, to abate a purpresture; it is a suit sought to be maintained upon the basis of the rights of appellee as owner of premises abutting upon the lake front park, or as a *cestui que trust* of the city of Chicago, which holds that park in trust.

We are unable to find any way by which appellee's right to thus maintain the suit may be sustained.

Therefore the order is reversed.

MR. PRESIDING JUSTICE WINDES:

I have grave doubt as to the correctness of the conclusion reached in this case, but in the absence of any precedent which sustains the injunction, I concur. The city, as a riparian owner of the park in trust for appellee and other lot owners abutting the park, as well as for the public in general, seems to be neglecting its duty to protect its beneficiaries, the lot owners included, from an encroachment upon their right of ingress to and egress from the lake. To hold, as we do, that this appellee must await the action of the public authorities to repress this violation of his right, is certainly a conservative ruling.